German-American Bank of Rochester, Appellant, *v.* Agnes L. Atwater, Respondent.

1. Promissory Notes Indorsed after Maturity — Duty to Demand Payment and Give Notice if Not Paid. Where a party indorses past due paper the law implies a contract that the holder will proceed with reasonable diligence to demand payment and give notice if not paid; and if he fails to do so the indorser is discharged.

2. Rule for Determining what is Reasonable Time. What constitutes a reasonable time for demanding payment of notes indorsed after maturity and giving notice if not paid so as to hold the indorser is not measured by an arbitrary period of time, but depends upon, and must be ascertained from, the facts of each case.

3. APPLICATION OF RULE.   Where notes were indorsed to a bank, after maturity, for the purpose of having the same paid out of assets assigned by the makers to the bank, next after the payment of paper which the bank already held, and in the belief that the assets would be sufficient for that purpose, it being agreed, however, for the protection of the bank, that the proceeds of the notes should be deposited to the indorser's credit, the deposit to remain as security for the payment of the notes, the bank, in the discharge of its duty to the indorser, is bound to make the demand and give the notice as soon as it ascertains the fact that the assets will be insufficient to pay either the whole or some part of the notes so indorsed, and upon default to give immediate notice of dishonor to the indorser.

4. DEMAND OF PAYMENT AND NOTICE OF PROTEST.   The implied contract between the holder of a note, indorsed after maturity, and the indorser, requires that demand of payment shall be made within a reasonable time and that protest shall follow dishonor at once, not that demand shall be made within a reasonable time, and notice of protest given within a reasonable time afterwards.

5. INEFFECTUAL NOTICE OF DISHONOR.   The request by a bank, of one who indorsed notes to it after maturity, for the return of the proceeds of the notes, which, pursuant to the original agreement, had been deposited in the bank to the indorser's credit, the deposit to remain as security for the payment of the notes until it could be ascertained that certain assets assigned to the bank by the makers would be sufficient, but which, without any modification of the agreement, had been withdrawn from time to time by the indorser, cannot be treated as notice of the dishonor of the notes by the makers.

*German-American Bank* v. *Atwater*, 33 App. Div. 627, affirmed.

(Argued October 22, 1900; decided November 27, 1900.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered August 29, 1898, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term without a jury.

The action was brought to recover on certain promissory notes made by the firm of Atwater, Armstrong and Clark to the order of the defendant, the wife of Atwater, which notes she indorsed to the plaintiff after maturity. The plaintiff, shortly prior to the 29th day of April, 1896, was the holder of considerable paper that it had discounted for the benefit of said firm, and the latter, being unable to pay their obligations, assigned all of the assets of the partnership to the bank

as security for the partnership obligations held by it.   The firm, as well as this plaintiff and defendant, were of the opinion that the assets were likely to prove more than sufficient to pay the bank in full, and Atwater was anxious that the balance should be applied in payment of the notes held by his wife, upon which there was due, on the 29th day of April, $7,467.   The other members of the firm and the plaintiff were willing that she should have the benefit of any resulting surplus to the extent of the amount due to her, and they undertook to make an arrangement that should accomplish that purpose.   The plan adopted was that the defendant should indorse the notes to the bank, which in return should give the defendant credit in an amount equal to the sum due on the notes, the deposit to stand as security for the payment of the notes. Four days later the defendant, through her husband, who acted for her in these matters, asked permission to draw $1,175 of the deposit to be used in part payment for a property that the defendant had previously purchased, and upon his promise to replace the amount, he was allowed to draw it.   June 8th the defendant drew out $4,399.19, and with it she paid the bank for property purchased from it by the Rochester Box and Lumber Company, of which she was a member.   Other sums were drawn from time to time down to December 23d following, when there remained on deposit only the sum of $181.18.   These moneys were withdrawn without any promise to return them, except in the first instance, but the plaintiff's cashier demanded their return on several occasions.   A day or two prior to March 24th, 1897, the cashier, having failed to secure the return of the moneys thus withdrawn, told the defendant's husband that she was liable as an indorser upon the notes, which he denied, and on the 24th a formal demand in writing was made for the payment of the notes, and about two weeks later, upon the 9th day of April, 1897, notice of protest in due form was given.

The trial resulted in a dismissal of the complaint, and the judgment entered thereon was affirmed in the Appellate Division.   Other facts, so far as material, are stated in the opinion.

*Joseph W. Taylor* for appellant.   As the notes were held by and were payable at the plaintiff's bank, formal demand of payment upon the makers was unnecessary.   (*F. Nat. Bank* v. *Crittenden*, 2 T. & C. 118 ; *Dykman* v. *Northridge*, 1 App. Div. 26 ; 153 N. Y. 662 ; *Bank of Syracuse* v. *Hollister*, 17 N. Y. 46 ; *Troy City Bank* v. *Grant*, Hill & Denio, 119.)   The defendant was seasonably and duly notified by the plaintiff of the non-payment of the notes by the makers, and that was the only duty plaintiff owed defendant.   (*Gilbert* v. *Dennis*, 3 Metc. 495 ; Bigelow on Bills & Notes [2d ed.], 261, 276, 309 ; *Cuyler* v. *Stevens*, 4 Wend. 566 ; *Wooden* v. *Foster*, 16 Barb. 146 ; *C. C. Bank* v. *Warden*, 1 N. Y. 413–417 ; *Van Hoesen* v. *Van Alstyne*, 3 Wend. 75, 79 ; *Leavitt* v. *Putnam*, 1 Sandf. 199 ; *Colt* v. *Bernard*, 18 Pick. 260 ; *Bishop* v. *Dexter*, 2 Conn. 419 ; *Patterson* v. *Todd*, 18 Penn. St. 426.)

*W. A. Sutherland* for respondent.   The demand and notice of protest, in order to charge a liability upon the indorser, must have been within a reasonable time after April 25, 1896, when the notes were indorsed by the defendant and purchased by the plaintiff.   (*Nearpass* v. *Gilman*, 104 N. Y. 510 ; *Eisenlord* v. *Dillenback*, 15 Hun, 23 ; 79 N. Y. 617.)   The notes were transferred to the plaintiff April 25, 1896, long after maturity, and protest was made April ninth of the following year, which was not within a reasonable time. (*Van Hoesen* v. *Van Alstyne*, 3 Wend. 75 ; *Turner* v. *I. C. M. Co.*, 74 Wis. 355 ; *Sice* v. *Cunningham*, 1 Cow. 409 ; *Salmon* v. *Grosvenor*, 66 Barb. 160 ; *Mudd* v. *Harper*, 1 Md. 110 ; *Martin* v. *Winslow*, 2 Mason, 241 ; *Field* v. *Nickerson*, 13 Mass. 131 ; *Mullick* v. *Bradakisson*, 9 Mo. P. C. 46.)

Parker, Ch. J.   That the plaintiff had to make a demand on the makers for payment and give notice of dishonor to the defendant in the event of non-payment, in order to recover of her upon the notes, is of course conceded.   The time at which demand should have been made and notice of protest

given, has been the subject of sharp controversy; but we regard the law applicable to this situation as settled by *Eisenlord* v. *Dillenback* (15 Hun, 23; affirmed in this court on the opinion below, 79 N. Y. 617). In that case, as in this one, the defendant indorsed the notes after maturity, but denied liability, notwithstanding the indorsement, because of the failure of the indorsee of the notes to make a proper demand for payment and give notice of dishonor; and the court stated the law in this state to be that where a party indorses past due paper "the law implies a contract  *  *  * that he will proceed with reasonable diligence to demand payment and give notice if not paid. Failing in this, the indorser is discharged."

The plaintiff in this case caused a notice of protest to be given to defendant on the 9th day of April, 1897, nearly a year after the latter had indorsed the notes, and we are to inquire whether the effect of that protest was to charge the indorser.

What is a reasonable time cannot always be measured by months; indeed, an investigation of a limited number of authorities discloses that as short a period as three months and as long a one as twenty-one months has been held to be within a reasonable time, depending upon the special facts of each case. The period of three months seemed at one time likely to be adopted by the courts, because that is the period for which notes intended for discount are usually made. But an arbitrary period of time, it was found, did not often measure a reasonable time within the apparent understanding of the parties, and so the rule came to be adopted that what constitutes a reasonable time shall depend upon and be ascertained from the facts of each case. In this case we think it not difficult to determine the time when it became the duty of the plaintiff to make a demand and give notice to the defendant in order to hold her liable as indorser.

It was thought desirable that the notes held by defendant should be paid next after the obligations of the firm held by the plaintiff, and to effectuate that result the notes were indorsed to the bank and the amount due on them placed to

the credit of the defendant, but to stand as security for the final payment of the notes. This arrangement indicates that it seemed probable to both these parties that the assigned property would prove sufficient to pay all the notes, including those indorsed to the bank by defendant; but they were not sure of it and hence the precaution requiring the proceeds of the notes to stand as security until in the course of liquidation of the assets it could be determined whether there would be ealized therefrom sufficient moneys to pay either the whole or some part of the notes indorsed by defendant. When that fact was ascertained, the defendant was entitled to have the demand made and notice of protest given to her, for under the arrangement of the parties that constituted a reasonable time within which the plaintiff should have performed the contract implied by law upon the delivery to it of the past due notes indorsed by the defendant.

A day or two prior to March 24th, 1897, the plaintiff's cashier, having previously informed defendant's husband that the assets had not turned out as well as had been anticipated, said to him : " I understand that your wife is liable as indorser on these notes." To which Mr. Atwater replied that he did not so understand it. On the 24th of March formal demand in writing was made for their payment, but notice of protest was not given to defendant until nearly two weeks afterward and on the 9th day of April. It appears, therefore, that as early as the 24th of March the plaintiff had ascertained that the assets were not sufficient to pay the notes and had determined to look to the indorser, and hence within the scope of the arrangement between the parties the time had arrived to make demand and give immediate notice of dishonor. But instead the notice of protest was not given until two weeks after a formal demand. The implied contract between the parties required that the demand should be made within a reasonable time, and that protest should follow dishonor at once, not that demand should be made within a reasonable time, and notice of protest given within a reasonable time afterwards.

6

We agree, therefore, with the courts below in holding that the delay in giving due notice of protest operated to discharge defendant as indorser.

The appellant further insists that oral notice of dishonor was several times given during the summer of 1896.

Within a few days after April 29th, 1896, when the defendant was given credit for the amount due on the notes, defendant asked permission to draw from the deposit $1,175 to be used in paying for certain property, promising to return the money. Other cash was drawn from time to time up to, and including December 23d, when only $181.18 remained on deposit, but as to such amounts there was no promise to redeposit. The plaintiff demanded the return to the account of the moneys thus drawn out, and it is now insisted that the demands thus made were equivalent to notice of protest. A sufficient answer to this claim is that it is not pretended that such demands were intended to be, or understood as a notice of protest. It was originally agreed that the proceeds of the notes should remain on deposit as security for their payment. It was doubtless thought that these moneys would not be required to pay the notes, but the arrangement was made to assure the plaintiff against possible loss. Without a change in the agreement, but in spite of it, nearly all of the moneys were withdrawn; and the request that they be returned was in harmony with plaintiff's right to have the original contract carried out. The demand in fact was that the situation should be restored as it was before the defendant, without right, withdrew from the account the greater part of the money. A demand that the defendant should live up to her agreement by restoring the moneys improperly withdrawn, was no more a notice of dishonor of the notes than was the original agreement that the money should remain on deposit as security for their payment.

The judgment should be affirmed, with costs.

GRAY, BARTLETT, MARTIN, VANN, CULLEN and WERNER, JJ., concur.

Judgment affirmed.